## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KIETH MORTON, individually and on behalf of other similarly situated persons,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 20-cv-2556** |
| **v.** | ) ) | |
| **CITIMORTGAGE, INC.,** | ) ) ) | |
| **Defendant** | ) ) ) | |

## COMPLAINT

1.      Plaintiff Keith Morton ("Plaintiff" or "Mr. Morton") brings this action individually and on behalf of all others similarly situated against Defendant CitiMortgage, Inc. ("Defendant" or "CitiMortgage").  On behalf of himself and the class and subclass he seeks to represent, Plaintiff alleges as follows:

## NATURE OF THE ACTION

2.      This is a class action on behalf of individuals and entities seeking redress for CitiMortgage's fraudulent and deceptive practices involving the manner in which CitiMortgage purchases and then seeks reimbursement for hazard insurance involving homes and residences that are the subject of foreclosure proceedings, and which are ultimately "redeemed" by the homeowners or their assignees.

3.      Through a deceptive pattern and practice going back years, CitiMortgage has charged individuals who redeem their homes after foreclosure sales for a full year of hazard insurance, even though just a small fraction of the insurance is typically used, and even though insurance companies will typically reimburse a purchaser for unused insurance. CitiMortgage is unjustly enriching itself and misleading persons who are at their most financially vulnerable—

1

homeowners who just lost their homes in foreclosure proceedings and are trying to struggle back and recover their homes.

### THE FORECLOSURE REDEMPTION PROCESS AND CITIMORTGAGE'S FRAUDULENT PRACTICES IN CONNECTION WITH THAT PROCESS

4.     In Kansas (and in a number of other states), homeowners who are foreclosed upon and lose their residences at foreclosure sales have the statutory right (in Kansas under K.S.A. § 60-2414) to "redeem" their properties—in effect buy back the properties from the purchasers (usually the lending banks) within a specified period of time.

5.     Redemptions in Kansas occur within either three months of the foreclosure sale, or 12 months after the sale, depending on the percentage of the original loan balance that remains outstanding.  The redemption period is three months if the borrower has paid less than one-third of the original mortgage balance.  If more than one-third has been paid, the period is 12 months. *See* K.S.A. § 60-2414(m).

6.     To redeem their property, homeowners must pay a sum equal to the sales price the property brought at the foreclosure sale plus certain costs incurred "[d]uring the period allowed for redemption" by the purchaser, including "taxes on the lands sold, insurance premiums on the improvements thereon, [and] other sums necessary to prevent waste."  K.S.A. § 60-2414(d).

7.     As noted, one such reimbursable expense is hazard insurance. When CitiMortgage as a foreclosing bank is the successful bidder at a foreclosure sale, it sometimes purchases hazard insurance to protect the property following the sale. CitiMortgage typically buys coverage for a full year, even though insurance can be purchased for shorter periods of time (such as one month).

8.     Prior to a redemption taking place, outside counsel for CitiMortgage prepares a redemption payoff statement. In redemptions involving the purchase of hazard insurance by CitiMortgage, counsel has the opportunity at that point to prorate the insurance amount. However, despite the fact virtually all expenses in typical real estate closings (including redemption closings)

are prorated, CitiMortgage and its counsel willfully and intentionally decide as part of their wrongful scheme to not prorate hazard insurance. Similarly, CitiMortgage and its counsel do not affirmatively disclose that the redemption payoff amount reflects the purchase of insurance for a full year.

9.    Therefore, in redemptions in which CitiMortgage has purchased a full year of insurance, the redeeming homeowner is required to pay that entire cost as part of the redemption.

10.    Following those redemptions, however, the insurance companies most likely reimburse CitiMortgage for the portion of the insurance that was not used, as is the custom for ordinary home insurance that is purchased but goes unused when the property changes ownership during the insurable period. For redemptions that occur within the three-month period permitted for, approximately 75% (or more) of the purchased insurance is not used. However, CitiMortgage does not return the reimbursed funds to the redeeming homeowners (or their assignees).  Rather, it keeps the funds as an undeserved windfall even though the proceeds are unearned and rightfully belong to the homeowners.

11.    The amounts at issue are not *de minimis*. While the cost of a full year of hazard insurance varies depending on property value and other factors, amounts can range from just under $1,000 to many thousands of dollars.

12.    Plaintiff asserts putative class action claims on behalf of himself and all members of the putative class and subclass defined below.  Plaintiff seeks damages, restitution, and injunctive relief.

## **PARTIES**

13.    Plaintiff Keith Morton is a citizen of Kansas who resides in Wichita, Kansas, and is over the age of 18.

14.   Defendant CitiMortgage is a Delaware Corporation with its principal place of business located in O'Fallon, Missouri.

## JURISDICTION AND VENUE

15.   This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The aggregate claims of all members of the proposed classes exceed $5 million, exclusive of interest and costs, and each have more than 100 putative class members.  Plaintiffs, as well as most members of the proposed Nationwide Class and Kansas Subclass, are citizens of states different than CitiMortgage.

16.   Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district or, alternatively, under 28 U.S.C. § 1391(b)(3) because CitiMortgage is subject to the Court's personal jurisdiction with respect to this action.

17.   This Court has personal jurisdiction over CitiMortgage because the transactions or occurrences giving rise to this action occurred in Kansas.

## FACTUAL ALLEGATIONS

### A.  Mr. Morton's Acquisition and Exercise of Redemption Rights in the Angelia and Samuel Paschal Foreclosure

18.   On December 22, 2011, CitiMortgage commenced a foreclosure action in the District Court of Sedgwick County, Kansas against homeowners Angelia and Samuel Paschal. Some five years earlier, the Paschals had obtained a loan secured by a mortgage on their residence located at 1839 N. Rutland Street in Wichita, Kansas.

19.   According to CitiMortgage's foreclosure petition, the Paschals had been delinquent on their loan payments since March 1, 2011.

20.   In its foreclosure petition, CitiMortgage requested that the court enter judgment against the Paschals and order that the period of redemption "be limited to three (3) months from the date of [the Sheriff's] sale" because less than one-third of the mortgage balance had been paid.

21.   Neither the Paschals nor counsel on their behalf appeared in or otherwise defended the foreclosure action.

22.   On June 6, 2013, the district court entered a judgment of foreclosure against the property and against the Paschals individually for $156,086.34, with $154,631.34 attributed to the unpaid principal balance and accrued interest, and the remainder to attorneys' fees, and various other expenses.

23.   The Paschals did not satisfy the judgment. Accordingly, on April 8, 2015, the sheriff conducted a public sale of the property, at which CitiMortgage purchased it for $116,183.00.

24.   The sheriff's sale triggered the commencement of the statutory period for which the property was subject to the right of redemption, a right now owned and exercisable by Plaintiffs.  Pursuant to the district court's order, Plaintiffs' redemption rights were to expire three months later, on July 8, 2015.

25.   At or around that same time, the Paschals assigned their redemption rights to Plaintiff.

### B.   CitiMortgage Includes the Cost of Excessive and Unused Insurance as Part of 's Redemption Payoff

26.   K.S.A. § 60-2414(d) permits a holder of a certificate of purchase to "repayment of all sums" paid for "taxes on the lands sold, insurance premiums on the improvements thereon, other sums necessary to prevent waste" during "the period allowed for redemption" by including such expenses in the redemption amount.  The statute requires all such expenses be "shown by receipts or vouchers filed in the office of the clerk of the district court."

27.   On September 11, 2015, counsel for CitiMortgage responded to a request from Plaintiff for a redemption payoff amount, citing the "statutory right to expend money to . . . maintain the property between now and when the Redemption Period expires, and to be reimbursed for those costs if indeed you . . . redeem the property" (under K.S.A. § 60-2414(d)) as support for the components of the payoff total.

28.   In this case, the redemption period was initially three months. In its redemption quote, counsel included "Hazard Insurance" in the amount of $1,722.00.

29.   By referencing its rights under K.S.A. § 60-2414(d) to reimbursement for costs incurred before "the Redemption Period expires," and including the insurance costs as a reimbursable expense in the payoff amount, CitiMortgage represented that such amounts were incurred for maintenance and preservation of the property during the redemption period.

30.   But they were not.  Contrary to CitiMortgage's representation, the $1,722.00 in expenses incurred to procure hazard insurance was in fact a premium for at least an entire year of coverage, not the redemption period.

31.   Assuming CitiMortgage's $1,722.00 total accurately reflected the cost of insuring the property for one year, the figure overstated the costs of insuring the property during the redemption period—*i.e.*, the period running from the date of the foreclosure sale to the date that Plaintiff redeemed the property—by approximately $971.87.

32.   Further, CitiMortgage—in direct violation of K.S.A. § 60-2414(d)—failed to file "receipts or vouchers" to support its purported insurance expenditure.

33.   Accordingly, and in reliance upon CitiMortgage's representations, Plaintiff exercised his redemption rights in the foreclosed property on September 14, 2015, by tendering $120,351.11 (which included the insurance amount of $1,722.00) to the Clerk of the Sedgwick County District Court.

34.   CitiMortgage likely cancelled, or certainly could have cancelled, the hazard insurance on or around September 14, 2015, immediately after Plaintiff exercised his redemption rights and thereby extinguished CitiMortgage's insurable interest in the property.

35.   CitiMortgage therefore likely did, or could have, received a refund of approximately $971.87 in unearned premium upon termination of the policy, even though the cost of such unused insurance was paid for by Plaintiff.

36.   Plaintiff first learned that he had been fraudulently overcharged for hazard insurance on or around August of 2020.

37.   Whether or not CitiMortgage received a refund of unearned hazard insurance premium, Plaintiff has suffered damage by paying excess hazard insurance premium in reliance on CitiMortgage's representations that such costs were incurred in during the redemption period, when they were not, in fact, attributable to property preservation during the redemption period and thus were not reimbursable under K.S.A. § 60-2414(d).

### C.   A Different Foreclosure Proceeding Suggests that CitiMortgage Likely Received a Refund of the Unearned Insurance Premium and Illustrates the Proper Procedure for Returning Funds to the Redeeming Party

38.   In another Kansas foreclosure case in which the foreclosed property ultimately was redeemed, the mortgage lender, Bank of America, returned to the court funds it received for unused insurance. *See Bank of America, N.A. v. Johnson*, Case No. 13-CV1565, Sedgwick County District Court) ("*Johnson*").

39.   Specifically, in a pleading titled "Motion to Deposit Funds in the Court Registry," Bank of America advised the court of the following:

(a) On or about November 17, 2015, Bank of America provided a redemption quote to the redeemer in the amount of $113,572.72.

(b) The redemption amount included an advance for "Hazard Insurance Premiums" in the amount of $2,348.00.

(c) On or about November 20, 2015, the redemption took place when the redeemer deposited redemption funds in the amount of $113,615.68 into the court registry.

(d) Subsequent to the redemption Bank of America terminated the insurance policy and recovered "the *pro rata* portion of the insurance premium in the amount of $1,404.95."

(e) Bank of America "is returning said funds to the Court and requests said funds to be deposited into the Court registry to await further order."

40.   Notably, the redeemer in *Johnson* was a corporate entity that acquired the homeowner's redemption rights, and was represented by counsel.

41.   The procedure that Bank of America followed in *Johnson* is an example of what should happen in these types of cases, and it demonstrates that banks do, in fact, receive reimbursements for unused insurance.  Unfortunately, *Johnson* is an outlier—and CitiMortgage does not appear to follow it.

## CLASS ACTION ALLEGATIONS

42.   <u>Description of the Classes</u>: Plaintiff brings this class action on behalf of himself and other similarly situated individuals. Pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3) and (c)(4), as applicable, Plaintiff seeks certification of the following classes of individuals:

(a) The Nationwide Class:

> All residents of the United States who redeemed a property purchased in foreclosure by CitiMortgage and, in connection with that redemption, reimbursed CitiMortgage for property insurance premiums that were not prorated to reflect the period of ownership held by CitiMortgage.

(a) The Kansas Subclass:

All residents of the United States who redeemed a property situated in Kansas that was purchased in foreclosure by CitiMortgage and, in connection with that redemption, reimbursed CitiMortgage for property insurance premiums that were not prorated to reflect the period of ownership held by CitiMortgage.

Excluded from the classes are CitiMortgage's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the classes are any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

43.   <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiff and members of the classes, and those questions substantially predominate:

(a)   Whether CitiMortgage was unjustly enriched by the conduct and practices described herein;

(b)   Whether CitiMortgage fraudulently misrepresented insurance expenses purportedly incurred for the maintenance of property during the redemption period;

(c)   Whether CitiMortgage negligently misrepresented insurance expenses purportedly incurred for the maintenance of property during the redemption period;

(d)   Whether CitiMortgage fraudulently failed to disclose facts pertaining to insurance expenses purportedly incurred for the maintenance of property during the redemption period;

(e)   Whether CitiMortgage's misrepresentations and/or omissions pertaining to insurance expenses purportedly incurred for the maintenance of property during the redemption period were material;

(f)   Whether equity and good conscience requires that CitiMortgage make restitution to Plaintiff and the class members;

(g)     Whether Plaintiff and the class members are entitled to recover actual damages from CitiMortgage;

(h)     Whether Plaintiff and the class members are entitled to injunctive relief; and

(i)     Whether CitiMortgage acted intentionally, maliciously, and/or recklessly when it undertook the conduct described herein, such that Plaintiff and the class members are entitled to an award of punitive damages.

44.    Numerosity: The proposed classes are so numerous that individual joinder of all members is impracticable.

45.    All members of the proposed classes are ascertainable by objective criteria. CitiMortgage and/or its counsel or other agents have litigation and loan servicing records sufficient to identify the members of the classes, and contact information which can be used to provide notice to the class members.

46.    Typicality: Plaintiff's claims are typical of the claims of the members of the proposed classes. Plaintiff and all members of the classes have been similarly affected by the actions of CitiMortgage.

47.    Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of members of the classes. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and counsel are committed to vigorously prosecuting this action on behalf of class members and have the financial resources to do so.

48.    Superiority of Class Action: Plaintiff and the members of the classes suffered, and will continue to suffer, harm by CitiMortgage's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the classes is impractical. Even if individual class members had the

resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by CitiMortgage's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.

49.   By its statements, words, and/or acts, CitiMortgage suppressed the truth regarding the hazard insurance premiums assessed to, and paid by, Plaintiff, the Nationwide Class members, and the Kansas Subclass members, including by:

(a)   affirmatively misrepresenting to Plaintiff, the Nationwide Class members, and the Kansas Subclass members that the hazard insurance expenses it incurred were for maintenance and preservation of the redeemed property during their statutory redemption periods, when the charges in fact corresponded to a coverage term exceeding the specific redemption periods;

(b)   failing to substantiate such claimed expenses by receipts or vouchers filed with the clerk of the district court, as required by K.S.A. § 2414(d); and/or

(c)   affirmatively withholding from Plaintiff, the Nationwide Class members, and the Kansas Subclass members the fact that CitiMortgage likely did, or could have, received refunds for hazard insurance that was not used and/or needed following  the redemption of the properties.

50.   Because of CitiMortgage's misrepresentations, omissions, and general scheme to conceal the truth about the claimed hazard insurance premiums, Plaintiff, the Nationwide Class members, and the Kansas Subclass members did not become aware, and could not have become aware through the exercise of reasonable diligence, of the facts described herein.

51.   Accordingly, the Court should toll the statutory limitations periods otherwise applicable to the claims of Plaintiff, the Nationwide Class, and the Kansas Subclass under the doctrines of fraudulent concealment, equitable estoppel, and/or the discovery rule.

<u>**COUNT I**</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff, the Nationwide Class, and the Kansas Subclass)**

52.   Plaintiff incorporates all prior allegations of this Complaint as if set forth fully herein.

53.   Plaintiff brings this cause of action on behalf of himself, the Nationwide Class, and the Kansas Subclass.

54.   Plaintiff conferred a benefit on CitiMortgage when he tendered a redemption payment comprised in part of a full year's worth of prepaid hazard insurance premium on the redeemed property.

55.   CitiMortgage cancelled, or should have cancelled, the hazard insurance it procured upon Plaintiff's exercise of his redemption rights, which extinguished any insurable interest CitiMortgage had in the property.

56.   CitiMortgage thus received or was entitled to receive a refund of portion of prepaid hazard premium that remained unearned at the time of the policy's cancellation.

57.    CitiMortgage nonetheless accepted, appreciated, retained such premium refund, or failed to exercise its rights to such a refund, with knowledge that it belonged to Plaintiff.

58.   CitiMortgage's retention of the premium refund by is inequitable under the circumstances because, among other reasons, all costs of procuring such insurance were borne by Plaintiff, not CitiMortgage, and because CitiMortgage's interests in the property or any income or expense reimbursements associated with it terminated when Plaintiff tendered his redemption funds.

## COUNT II
### Fraudulent Misrepresentation
### (On Behalf of Plaintiff, the Nationwide Class, and the Kansas Subclass)

59.   Plaintiff incorporates all prior allegations of this Complaint as if set forth fully herein.

60.   Plaintiff brings this cause of action on behalf of himself, the Nationwide Class, and the Kansas Subclass.

61.   CitiMortgage made representations to Plaintiff regarding the amount of hazard insurance procured for maintenance and preservation of the property during the redemption period and regarding the amount Plaintiff must pay to exercise his statutory redemption rights.

62.   These representations were false—CitiMortgage overstated the amount Plaintiff was required to pay in order to exercise his redemption rights by including a hazard insurance premium in Plaintiff's redemption payoff amount that exceeded the term of the redemption period.

63.   CitiMortgage intended that Plaintiff rely on its representations to ascertain the total sum he must pay and expenses he must reimburse CitiMortgage in order to exercise his redemption rights.

64.   Plaintiff relied on the truth and accuracy of the information conveyed by CitiMortgage to ascertain the total sum he must pay and expenses he must reimburse CitiMortgage in order to exercise his redemption rights.

65.   Plaintiff sustained damages when he relied on the truth and accuracy of such information conveyed by CitiMortgage because, among other reasons, he reimbursed the costs of a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable to the redemption period.

66.   CitiMortgage acted intentionally, maliciously, and/or recklessly when it undertook the foregoing conduct, such that Plaintiff is entitled to an award of punitive damages sufficient to punish and deter like conduct.

**COUNT III**
**Negligent Misrepresentation**
**(On Behalf of Plaintiff, the Nationwide Class, and the Kansas Subclass)**

67.   Plaintiff incorporates all prior allegations of this Complaint as if set forth fully herein.

68.   Plaintiff brings this cause of action on behalf of himself, the Nationwide Class, and the Kansas Subclass.

69.   CitiMortgage supplied false information to Plaintiff for his guidance and benefit in ascertaining the amount he must pay to redeem his property in foreclosure.

70.   Specifically, CitiMortgage failed to exercise due care in ensuring that the hazard insurance premium included in Plaintiff's redemption payoff amount accurately corresponded to the duration of the redemption period.

71.   Plaintiff relied on the truth and accuracy of the information conveyed by CitiMortgage regarding the nature and extent of reimbursable expenses included in Plaintiff's redemption payoff amount.

72.   Plaintiff is within the class of persons whom CitiMortgage intended to guide when it supplied information regarding the nature and extent of reimbursable expenses included in Plaintiff's redemption payoff amount or, alternatively, is within the class of persons to whom CitiMortgage knew such information would be communicated by another.

73.   Plaintiff sustained damages when he relied on the truth and accuracy of such information conveyed by CitiMortgage because, among other reasons, he reimbursed the costs of

a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable to the redemption period.

## COUNT IV
### Fraud by Silence
### (On Behalf of Plaintiff, the Nationwide Class, and the Kansas Subclass)

74.   Plaintiff incorporates all prior allegations of this Complaint as if set forth fully herein.

75.   Plaintiff brings this cause of action on behalf of himself, the Nationwide Class, and the Kansas Subclass.

76.   CitiMortgage had a duty to disclose material facts to Plaintiff regarding the nature and extent of reimbursable expenses added to Plaintiff's redemption total, including: that the claimed hazard insurance expenses were annualized and not prorated to the actual duration of the redemption period; and/or that CitiMortgage and/or its agents received a refund of unearned premium to which Plaintiff was entitled.

77.   CitiMortgage's duty to disclose arises by law, including without limitation, under K.S.A. § 2414(d) 12 CFR § 1024.37(g), and litigant's and/or its counsel's duties of candor to the court.

78.   CitiMortgage's duty to disclose also arises by virtue of its own culpability in creating Plaintiff's mistaken belief that the claimed hazard insurance expenses were attributable to the redemption period.

79.   CitiMortgage knew or had reason to know that the undisclosed information about the hazard insurance expenses were material to Plaintiff's decision to tender a redemption payment inclusive of such expenses.

80.   CitiMortgage intended that Plaintiff rely on its silence as grounds to believe that the stated hazard insurance expenses covered only the term of the redemption period and/or that Plaintiff was not entitled to a refund of unearned premium upon termination of the coverage.

81.   Plaintiff in fact relied on CitiMortgage's silence as grounds to believe that the stated hazard insurance expenses covered only the term of the redemption period and/or that Plaintiff was not entitled to a refund of unearned premium upon termination of the coverage.

82.   Plaintiff has sustained damages directly and proximately caused by the foregoing conduct in an amount to be proven at trial, including by paying the costs of a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable to the redemption period.

83.   CitiMortgage acted intentionally, maliciously, and/or recklessly when it undertook the foregoing conduct, such that Plaintiff is entitled to an award of punitive damages sufficient to punish and deter like conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed classes, respectfully requests that this Court:

(a) Certify the Nationwide Class and the Kansas Subclass pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4);

(b) Appoint Plaintiff as Class Representative for the Nationwide Class and the Kansas Subclass and appoint him counsel as Class Counsel for the Nationwide Class and the Kansas Subclass pursuant to Federal Rule of Civil Procedure 23(g);

(c) Find CitiMortgage's conduct was unlawful as alleged herein;

(d) Enjoin CitiMortgage from engaging in further unlawful conduct as alleged herein;

(e) Award Plaintiff and the class members nominal, actual, compensatory, consequential, and punitive damages;

(f) Award Plaintiff and the class members pre-judgment and post-judgment interest;

(g) Award Plaintiff and the class members their reasonable attorneys' fees, costs, and expenses; and

(h) Grant such other relief as the Court deems just and proper.

*     *     *

<u><strong>DEMAND FOR JURY TRIAL</strong></u>

Plaintiff demands a trial by jury on all issues so triable and designate Kansas City, Kansas, as the place of trial.

Dated:  November 6, 2020.                           Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ Bradley T. Wilders
Bradley T. Wilders  KS #78301
Michael R. Owens  KS #26747
460 Nichols Road, Ste. 200
Kansas City, Missouri 64112
Tel: 816-714-7100
wilders@stuevesiegel.com
owens@stuevesiegel.com

**SNYDER LAW FIRM LLC**

Paul D. Snyder   KS #14537
Karen E. Snyder KS #15424
Snyder Law Firm, LLC
10995 Lowell Ave, Ste 710
Overland Park, KS 66210
Tel: 913-685-3900
psnyder@snyderlawfirmllc.com
ksnyder@snyderlawfirmllc.com

*Attorneys for Plaintiffs and*
*the Proposed Classes*